**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **(1) ZOLTAR SATELLITE SYSTEMS, INC.,** | § | |
| **a Delaware corporation,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **(1) LG ELECTRONICS MOBILE** | § | |
| **COMMUNICATIONS COMPANY, aka LG** | § | **Case No. 2:05-CV-215 LED** |
| **ELECTRONICS MOBILECOMM, a California** | § | |
| **corporation; (2) LG ELECTRONICS INC., a** | § | |
| **South Korean corporation; (3) MOTOROLA,** | § | |
| **INC., a Delaware corporation; (4) AUDIOVOX** | § | |
| **COMMUNICATIONS CORPORATION, a** | § | |
| **Delaware corporation; (5) UTSTARCOM INC., a** | § | |
| **Delaware corporation; (6) UTSTARCOM** | § | |
| **PERSONAL COMMUNICATIONS, fka** | § | |
| **AUDIOVOX COMMUNICATIONS** | § | |
| **CORPORATION, a Delaware corporation;** | § | |
| **(7) SANYO NORTH AMERICA** | § | |
| **CORPORATION, a Delaware corporation;** | § | |
| **(8) SANYO ELECTRIC CO., LTD., a Japanese** | § | |
| **corporation; (9) PALMONE, INC., a Delaware** | § | |
| **corporation; (10) WHERIFY WIRELESS, INC. a** | § | |
| **California corporation and (11) SPRINT** | § | |
| **CORPORATION, a Kansas corporation,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Sprint Corporation's Motion to Sever and Transfer to the U.S. District

Court for the Northern District of California (Docket No. 51), Palm, Inc.'s Motion to Transfer Venue

to the Northern District of California (Docket No. 58), LG Electronics MobileComm U.S.A., Inc.

and Motorola Inc.'s Joint Motion to Transfer (Docket No. 70), Sanyo Defendants' Motion to

Transfer to the Northern District of California (Docket No. 71), Audiovox Communication Corp.'s Joinder in Defendants' Motions to Transfer (Docket No. 124), and UTStarcom's Joinder in Defendants' Motions to Transfer (Docket No. 118).   In accordance with the Court's ruling from the bench on November 2, 2005, the Court **GRANTS** Defendants' motions to transfer venue and **DENIES** all other motions as moot.

## BACKGROUND

In March 2001, Plaintiff Zoltar Satellite Systems, Inc. ("Zoltar") filed suit in the Northern District of California against Sprint Corporation ("Sprint"), Qualcomm, Inc. ("Qualcomm") and Qualcomm's wholly owned subsidiary, Snaptrack, Inc. ("Snaptrack") alleging patent infringement[1] ("the California litigation").   The three patents at issue in the California litigation were United States Patent No. 5,650,770 ("the '770 patent"), United States Patent No. 5,963,130 ("the '130 patent"), and United States Patent No. 6,198,390 ("the '390 patent").   These patents involve technology that utilizes Global Positioning System ("GPS") satellites and a collection of chipsets and servers to locate a person calling 911 from a cellular telephone.[2]   Zoltar alleged that Qualcomm and Snaptrack's integrated MSM3300 and MSM5100 chipsets and software infringed the '770, '130, and '390 patents.   Zoltar further alleged that Sprint directly infringed the '770, '130, and '390 patents by using the same Qualcomm and Snaptrack chipsets and software in its cellular phones.

The California litigation has been actively litigated before Judge James Ware in the San Jose

---

[1] Zoltar voluntarily dismissed Sprint from the California litigation because of a conflict of interest with Zoltar's California attorneys.

[2] In October of 2001 the Federal Communications Commission issued a mandate, called the E 911 mandate, requiring a specific percentage of wireless phone handsets to have the capability to be located within a certain range of accuracy.

Division of the Northern District of California for the past four years.  In 2004, the case was tried before a jury and resulted in a finding of non-infringement with respect to the claims of two of the three patents.  The court granted a judgment of non-infringement as a matter of law as to the third patent at issue.   The jury did not reach a verdict as to the counterclaims for invalidity and unenforceability; therefore, these issues remain before Judge Ware.[3]

In June 2005, Zoltar filed this action against LG Electronics Mobile Communications Company ("LG"); LG Electronics, Inc.; Audiovox Communications Corporation; UTStarcom, Inc.; UTStarcom Personal Communications Corporation ("UTStarcom"); Sanyo Electric Co., Ltd. ("Sanyo"); Palmone, Inc. ("Palm"); Wherify Wireless, Inc.; and Sprint (collectively referred to as "Defendants") alleging willful infringement of the '770, '130, and '390 patents and United States Patent No. 6,518,889 ("the '889 patent").[4]

Defendants argue that the Court should transfer this case under 28 U.S.C. § 1404(a) to Judge Ware in the Northern District of California, San Jose Division.  Defendants contend that this case and the California litigation involve the exact same technology, three of the same patents, and many of the same claim terms.  Defendants argue that Judge Ware has invested substantial time and resources becoming familiar with the technology at issue in this case.  Zoltar argues that this case involves different technology, patent claims, parties, and accused products and should not be transferred.

---

[3] The issues still before Judge Ware are whether claim 32 of the '770 patent and claim 13 of the '130 patent are unenforceable for inequitable conduct and whether claims 13, 31, 32, 34, and 35 of the '130 patent are anticipated or obvious over the prior art.

[4] Zoltar voluntarily dismissed its claims against Wherify without prejudice.

3

## APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Supreme Court has indicated that § 1404(a) "is intended to place discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Section 1404(a) protects litigants, witnesses, and the public against unnecessary inconvenience and expense and avoids wasted time, energy, and money.  *Van Dusen*, 376 U.S. at 616.

The first determination to be made under § 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  If so, under § 1404(a), a court examines the issues of "the convenience of the parties and witnesses," and "the interest of justice."  *Id*.  The determination of whether a motion to transfer is proper involves examining several private and public interest factors, none of which are given dispositive weight.  *Id*.  The Court considers private interest factors such as: (1) the relative ease of access to sources of proof;  (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive.  *Id*.  The Court considers public interest factors such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id*.  The public interest factors encompass the interest of justice consideration of the § 1404(a)

analysis.  It is well established that the interest of justice is an important factor in the § 1404(a)

analysis.  *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003).

"Consideration of the interest of justice, which includes judicial economy 'may be determinative to

a particular transfer motion, even if the convenience of the parties and the witnesses may call for a

different result.'"  *Regents of the Univ. Of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir.

1997).  A court should also consider the plaintiff's forum choice, but the plaintiff's forum choice by

itself is not conclusive or determinative.  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003);

*Z-TEL Communications, Inc. v. SBC Communications, Inc.*, 331 F. Supp. 2d 567, 571 (E.D. Tex.

2004) (Folsom, J.).  A court must consider these factors in light of all the claims alleged in the case

and not restrict its analysis to only the plaintiff's claims.  *In re Volkswagen*, 371 F.3d at 204.

## ANALYSIS

Zoltar does not dispute, and the Court agrees, that this action could have been brought in the

Northern District of California.  Therefore, the Court now turns to the convenience of the parties and

witnesses and the interest of justice.  The Court will address the interest of justice considerations

first, as they are more compelling in the present case.

## 1.  Public Interest Factors

### a.  Judicial economy

In cases that involve a highly technical subject matter, such as patent litigation, judicial

economy may favor transfer to a court that is already familiar with the issues involved in the case.

*Regents*, 119 F.3d at 1565.  Defendants argue that Judge Ware's substantial investment of time and

resources to learn and understand the same technology, patents, and legal issues present in this case

strongly favor the transfer of this case.  In the California litigation, Judge Ware reviewed tutorials

5

on the technology at issue; conducted three claim construction proceedings; issued three claim construction orders construing over twelve claim terms; considered motions for summary judgment and motions in limine; conducted a three-week jury trial in which he heard invalidity, infringement, and inequitable conduct arguments; prepared a sixty-five page jury instruction; and considered motions for judgment as a matter of law.  Defendants contend that this Court would have to duplicate much of the work already performed by Judge Ware if it does not transfer this case, which would unnecessarily consume already sparse judicial resources.

Zoltar argues that this case involves different technology than the California litigation because the California litigation was limited to Qualcomm's MSM3300 and MSM5100 series chips and this case involves the use of the entire cellular phone as a personal alarm.  Defendants claim that this case involves the same exact GPS technology as the California litigation, the only difference being that the new technology involves elements related to speech recognition.  Zoltar was unable, both in its briefs and in oral argument, to identify specific significant differences between the technology at issue in this case and that at issue in the California litigation.  Although the accused products in this case are cellular phones as opposed to the individual chips, the cellular phones obtain their alleged infringing functionality from individual chips very similar to those at issue in the California litigation.  The Court is not persuaded that the technology at the core of this litigation is significantly different from that in the California litigation.

Furthermore, Zoltar alleges that judicial economy will not be served by transferring this case to Judge Ware because this case involves many different claims and an entirely different patent. Three of the same patents at issue in the California litigation are at issue in this case.  A fourth patent, the '899 patent, which Defendants argue is a continuation-in-part of the '390 patent, is also

at issue in this case.  Defendants contend that the '899 patent does not  introduce new technology

or claims that will be central to this litigation.  In both its briefs and during oral argument, Zoltar was

unable to identify specific claims from the four patents at issue in this case that significantly differed

from those at issue in the California litigation.

  Zoltar admits that some of the claims at issue in this case were also at issue in the California

litigation but contends that the threat of inconsistent claim constructions as to these claims is not a

determinative issue.  Zoltar cites this Court's opinion in *ConnecTel, LLC v. Cisco Systems, Inc.*,

2005 WL 366966, (E.D. Tex. Feb. 16, 2005) arguing that transferring the case would not favor

judicial economy and Judge Ware's previous claim constructions should not be a significant

consideration.  *ConnecTel* is distinguishable from this case on several points.

  In *ConnecTel*, the plaintiff ConnecTel, LLC ("ConnecTel") brought suit in this Court

accusing Cisco Systems, Inc. ("Cisco") of infringing United States Patent Nos. 6,016,307 ("the '307

patent"), 6,144,641 ("the '641 patent"), 6,456,594 ("the '594 patent"), and 6,473,404 ("the '404

patent").  Cisco filed a motion to transfer the case to the Eastern District of Pennsylvania to Judge

James Knoll Gardner based on his alleged familiarity with the technology and patents at issue in the

case.  *Id*. at *1.  However, in *ConnecTel*, Judge Gardner had far less exposure to the technology and

patents at issue than Judge Ware has in the present case.

  In 2001, ConnecTel filed a suit in the Eastern District of Pennsylvania alleging infringement

of its '307 patent.  *Id.* at *1.  Judge Stuart Dalzell presided over the discovery and pre-trial motions

in the case until the case was assigned to Judge Gardner.  *Id*.  Judge Gardner held a *Markman* hearing

and construed two claims in the '370 patent, and the case settled shortly after Judge Gardner issued

his claim construction.  *Id.*  Subsequently, ConnecTel filed another case in the Eastern District of

Pennsylvania alleging infringement of the '370 patent.  *Id.*  This second case was then transferred to the Southern District of New York.  *Id.*  As a consequence, Judge Gardner's exposure to the patents and technology at issue in the previous cases was limited to his construction of two claim terms from only one of four patents-in-suit before this Court.   As mentioned above, Judge Ware has done a great deal more than simply construe two terms in one of four patents-at-issue in this case.

Zoltar cites language from *ConnecTel* to support its contention that Judge Ware's claim construction should not be a significant consideration.  In *ConnecTel*, this Court discussed the fact that Judge Gardner had already issued a claim construction and stated, "the gains in judicial economy are at best minimal, and possibly non-existent since such gains could be realized by simply referring to Judge Gardner's claim construction, if necessary."  *Id.* at *4.  This language must be read in the context of the facts discussed above and considered with the fact that Judge Gardner had only construed two claims from one of the four patents-in-suit.  The Court also discussed its previous recognition that inconsistent claim constructions of the same claims by different courts can create serious problems.  *Id.* at *3.  These problems especially deserve consideration when the same patent is simultaneously being litigated in another district.  *See id.*  None of the four patents in *ConnecTel* were simultaneously being litigated in the Eastern District of Pennsylvania.  *Id.*  However, three of the four patents in this case are still being litigated in the Northern District of California.

While this Court is always willing to take the time and effort necessary to become versed in the type of technology and the patents-at-issue, the Court is not persuaded that the interests of judicial economy would be well served by retaining this case.  Judge Ware's investment of time and effort with these patents has been, and continues to be, substantial.  The Court has conferred with Judge Ware about his case, familiarity with the patents-in-suit, and willingness to accept this case

8

if transferred.  A duplication of his efforts would be wasteful of judicial resources and detrimental to judicial economy.  Therefore, judicial economy considerations strongly favor transferring this case to Judge Ware in the Northern District of California.

### b.  Administrative difficulties flowing from court congestion

 The caseload of this Court and Judge Ware's court are relatively similar.  Defendants argue that this Court has a faster time to trial than courts in the Northern District of California.  Although this might be true, Judge Ware's familiarity with the technology and patents-at-issue will counterbalance the expediency of this Court's docket.  Accordingly, this factor is neutral and does not weigh in favor of, or against, transferring the case.

### c.  Localized interests in resolving controversies

Neither the Eastern District of Texas nor the Northern District of California has a greater localized interest in resolving the controversies at issue in this case.  Defendants sell the alleged infringing cellular phones throughout the United States.  Therefore, no specific locality has a dominant interest in resolving the issue of whether Defendants' cellular phones infringe Zoltar's patents.  This factor is neutral and does not weigh in favor of, or against, transferring this case.

### d.  Forum's familiarity with the governing law

This Court and Judge Ware are both very familiar with the federal laws governing patent infringement and the other legal issues presented by this action.  This factor is neutral and neither favors nor discourages transfer.

### e.  Conflict of laws

This action was brought under federal patent laws.  Federal patent laws are statutory and substantive decisions under these laws are reviewed by the Federal Circuit in all districts, eliminating

any possibility of a conflict of laws issues.

## 2. Private Interest Factors

The plaintiff's choice of forum is often considered in conjunction with the private interest factors. *See, e.g., Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 at 768-69 (E.D. Tex. 2000). Although the Court gives due deference to a plaintiff's choice of forum, it is just one component in the Court's overall analysis. Any deference given to a plaintiff's forum choice can be overcome by other compelling private and public interests that favor transfer.

Overall, the private interest factors in this case do not significantly influence the transfer analysis. In complex patent litigation involving a multitude of large companies with facilities and employees all over the country, the private interest factors often become diluted and less influential in the transfer analysis.

### a. Relative ease of access to sources of proof

Defendants claim that the majority of the evidence likely to be used in this case is located in California. Sprint and Palm argue that because they use Qualcomm and Snaptrack chip technology to accomplish the alleged infringing functionality in their cellular phones, the majority of their relevant documents will be related to these companies. Both Qualcomm and Snaptrack are located in California. Furthermore, although Sprint's headquarters are in Kansas, it argues that it has already produced large amount of documents to the Northern District of California in the previous California litigation. Sanyo and LG also argue that the majority of their documents related to this case are located in California. Clearly, the majority of documents that will be at issue in this case are likely located in California. However, due to advances in the copying, storage, and transfer of data, the accessibility and location of sources of proof is given little weight in the § 1404(a) transfer analysis.

*Mohamed*, 90 F. Supp. 2d at 778.  Therefore, this factor only slightly weighs in favor of transferring the case to Judge Ware.

      *b.  Availability of the compulsory process*

Although not many non-party witnesses have been specifically identified in this case, those associated with Qualcomm and SnapTrack will likely be located in California.  Non-party witnesses in California are outside of this Court's subpoena power but are within Judge Ware's subpoena power.  Accordingly, this factor favors transferring the case to California.

      *c.  Willing witnesses' costs of attendance*

Defendants argue that most of the witnesses that will be called to testify in this case are located in California.  Palm, Sanyo, and LG all have headquarters in California and argue that the majority of their employees, particularly those that would be called to testify in this case, are located in California.  As mentioned above, Sprint is located in Kansas and admits that neither this Court nor the Northern District of California is significantly more favorable in regards to its cost related to the attendance of witnesses.

Zoltar correctly points out that the convenience and costs associated with non-party witnesses is more important and is given greater weight than the convenience of party witnesses.  *See In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999).  Furthermore, Zoltar points out that specific non-party witnesses have not yet been disclosed by the parties.  Defendants contend that Qualcomm and SnapTrack employees, non-party witnesses, will likely be called to testify.  Although more weight is given to the convenience of non-party witnesses, the convenience of the party witnesses is still a part of the analysis. The majority of both party and non-party witnesses will be located in California.  The cost of attendance for these witnesses will be less if the case is tried in

11

the Northern District of California rather than in the Eastern District of Texas.  This factor weighs in favor of transferring the case to Judge Ware.

    *d.  All other practical problems*

Aside from those discussed above, the parties do not raise any other practical problems that should be considered in this Court's transfer analysis.

**CONCLUSION**

Defendants have demonstrated that the convenience of the parties and witnesses and most importantly the interest of justice, particularly considerations of judicial economy, favor the transfer of this case to Judge Ware in the Northern District of California.  Accordingly, the Court **GRANTS** Defendants' motions to transfer and **ORDERS** this case transferred to Judge Ware in the Northern District of California.  The Court **DENIES** all other motions as moot.

    **So ORDERED and SIGNED this 29th day of November, 2005.**



    **LEONARD DAVIS**
    **UNITED STATES DISTRICT JUDGE**

12
